*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0235P (6th Cir.)
File Name: 04a0235p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DAVID J. SCOTT,
        *Plaintiff-Appellee,*

v.                           No. 03-2427

PATRICK CHURCHILL,
Inspector, Carson City
Regional Facility, et al.,
        *Defendants,*

PHILIP BAIR,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 95-00571—David W. McKeague, District Judge.

Argued: June 11, 2004

Decided and Filed: July 23, 2004

Before: SILER, MOORE, and BALDOCK, Circuit
Judges.[*]

───────────────

[*] The Honorable Bobby R. Baldock, Circuit Judge of the United States
Court of Appeals for the Tenth Circuit, sitting by designation.

───────────────

## COUNSEL

**ARGUED:** Kevin R. Himebaugh, OFFICE OF THE
ATTORNEY GENERAL, Lansing, Michigan, for Appellant.
S. Grace Davis, MILLER, JOHNSON, SNELL &
CUMMISKEY, Grand Rapids, Michigan, for Appellee.
**ON BRIEF:** Kevin R. Himebaugh, OFFICE OF THE
ATTORNEY GENERAL, Lansing, Michigan, for Appellant.
S. Grace Davis, David R. Cleveland, MILLER, JOHNSON,
SNELL & CUMMISKEY, Grand Rapids, Michigan, for
Appellee.

───────────────

## OPINION

───────────────

KAREN NELSON MOORE, Circuit Judge. Defendant-
Appellant Philip Bair ("Bair") appeals from the denial of
qualified immunity in Plaintiff-Appellee David J. Scott's
("Scott") § 1983 suit against him. Scott, a prisoner at the
Michigan Department of Corrections Carson City Regional
Facility, alleges that Bair, a guard at the facility, retaliated
against Scott's exercise of his First Amendment rights by
filing a false major misconduct ticket against Scott. This is
the third time this court has heard an appeal in this case on the
issue of the proper standard governing prisoner First
Amendment retaliation claims; contested in this appeal is the
standard that would have been apparent to a reasonable
officer when the underlying events took place, in July of
1995. Because this court's case law in July of 1995 would
have put a reasonable officer on fair warning that his conduct
was illegal, the denial of qualified immunity is **AFFIRMED**.

# I. BACKGROUND

As the nonmoving party, it is Scott's version of the facts which must be relied upon. On July 6, 1995, Scott was required to meet with a hearing officer on an unrelated misconduct ticket. Upon Scott's checking in with Bair to gain entry to the building, Bair said to Scott of his misconduct ticket, "[T]hat doesn't surprise me." Joint Appendix ("J.A.") at 174. Scott asked Bair to explain this remark and indicated that he was considering filing a grievance against Bair. At that point, Bair walked over to where Scott was standing and stated, "You don't know who you're f---ing with." J.A. at 34. Bair then grabbed the back of Scott's neck and continued, "You want to f--- with me, b----!". J.A. at 34. Later that day, Scott submitted a grievance against Bair, reciting facts consistent with his later allegations in the complaint. The following day, on July 7, Bair filed a Major Misconduct Charge against Scott for insolence. A Major Misconduct Charge can result in a higher security classification, placement in administrative segregation, or forfeiture of good-time credits. On July 27, a hearing was held on the Misconduct Charge, and the charge was "not sustained," with the hearing officer indicating that Bair's credibility was "questionable," relying in part on the fact that the Misconduct Charge was filed "24 hours later, after the inmate had claimed to have been assaulted." J.A. at 147.

Scott also submitted below an affidavit from a fellow inmate at the facility, Richard F. Thomas ("Thomas"), who claims to have overheard a conversation on July 6[1] between

---

[1] There seems to be some confusion in Scott's materials as to when the events took place, on July 6 or July 7. The dates on each of the prison forms indicate that the incident took place and the Misconduct Charge was filed on July 6. Although Thomas's affidavit indicates that he overheard this conversation on the morning of July 7, the conversation itself could only have happened on July 6. Given that Thomas's affidavit was filed a year after the incident, it is reasonable to assume that this was an insignificant error, rather than evidence of unreliability.

Bair and another guard, Dale Feldpausch ("Feldpausch"). Thomas stated that Bair described the events of the morning to Feldpausch, consonant with Scott's version of the facts. Bair told Feldpausch that he did not like Scott, due to Scott's repeated conflicts with Feldpausch over Scott's jailhouse lawyer activities. Feldpausch recommended to Bair that in order to cover up his wrongdoing, Bair should write a false ticket against Scott, alleging that Bair had patted down Scott after a verbal threat — the version of events Bair would ultimately write up in the Misconduct Charge. Thomas also stated that Feldpausch had told Bair that to conceal more effectively his wrongdoing, Bair should have immediately written the false ticket and taken Scott to administrative segregation.

On August 16, 1995, Scott filed suit pro se against a host of defendants on various claims, including a claim against Bair for retaliation against Scott's exercise of First Amendment rights. The district court initially dismissed Scott's complaint, on August 31, 1995. In response to a motion by Scott for rehearing, the district court reinstated Scott's Fourteenth Amendment and First Amendment retaliation claims but affirmed the dismissal of his Eighth Amendment claim. Scott filed an amended complaint, and on August 19, 1996, the defendants moved to dismiss or for summary judgment, which latter motion was granted on August 28, 1997. This was a grant of summary judgment on the merits, rather than on the basis of qualified immunity. Scott appealed to this court, which initially affirmed the grant of summary judgment in an unpublished order dated December 9, 1999. *See Scott v. Churchill*, No. 97-2061, 1999 WL 1206937 (6th Cir. Dec. 9, 1999). Scott filed a motion for rehearing, which was granted in a second unpublished order, on April 6, 2000. The order affirmed the dismissal of most of Scott's claims, but, applying the standards of *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc), reinstated Scott's retaliation claim against Bair and remanded the case for further proceedings. *See Scott v. Churchill* [*Scott I*], No. 97-2061, 2000 WL 519148 (6th Cir. April 6, 2000). On remand,

counsel was appointed for Scott, and Bair filed for summary judgment on the basis of qualified immunity on July 24, 2000. That motion was granted on March 29, 2001, on the basis that the clearly established law at the time of the incident would have put a reasonable officer on notice only that behavior "shocking to the conscience" could support a retaliation claim. Scott appealed again to this court; six weeks before the case was argued, this court issued *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002), holding that in 1994, the "shocks the conscience" test was *not* the clearly established law governing retaliation claims, and that some lesser standard governed the qualified immunity determination. The panel deciding Scott's appeal relied on *Bell* in reversing the grant of summary judgment on the basis of qualified immunity. In an unpublished opinion, the panel stated that

> The [*Bell*] court concluded that as early as 1989, the applicable standard for evaluating an adverse action undertaken in retaliation for an individual's exercise of his or her First Amendment rights is whether it is capable of deterring a person of ordinary firmness from exercising [such] rights . . . .
>
> In light of *Bell*, we REVERSE the district court's decision, and REMAND to the district court for reconsideration.

*Scott v. Churchill* [*Scott II*], No. 01-1625, 2003 WL 77208, *1-*2 (6th Cir. Jan. 8, 2003) (internal quotation marks omitted). Upon remand for reconsideration, the parties briefed the qualified immunity issue in light of *Bell* and of the remand, and the district court denied qualified immunity to Bair. Bair timely appeals.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo the denial of summary judgment on the basis of qualified immunity. *Bukowski v. City of Akron*, 326 F.3d 702, 707 (6th Cir. 2003). Such a denial, to the extent it turns upon issues of law and not of disputed fact, is immediately appealable as a final order. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Weaver v. Shadoan*, 340 F.3d 398, 406 (6th Cir. 2003).

### B.  The Elements of a Retaliation Claim

Under *Thaddeus-X*, in order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action. 175 F.3d at 394. In order for the retaliation to be actionable, it must be "capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Id.* at 398. At this point in the litigation, it is settled that Scott has made out a case that can survive summary judgment on the merits; the only remaining question is qualified immunity. An official defendant in a § 1983 suit is entitled to qualified immunity if her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bell*, 308 F.3d at 601 (internal quotations omitted).

### C.  The Effect of the Prior Panel Decision

Scott argues as a preliminary matter that *Scott II*, containing the statement that under *Bell v. Johnson*, the clearly established right at the time of the events underlying the instant case was to be free from adverse action which would have deterred a person of ordinary firmness from exercising First Amendment rights, was binding upon the district court

and is binding upon this court. He cites the doctrine of law of the case, in particular the mandate rule, and a line of cases holding that where a party fails to seek reconsideration of an opinion containing a misstatement of law or fact, she forfeits the right to argue that the opinion was erroneous in subsequent proceedings.

*Bell* nowhere makes the explicit statement that the *Thaddeus-X* standard is to be used when judging whether state officers' actions violated clearly established law at the time of the incidents in *Bell*, and by extension in this case. Instead, *Bell* indicates that the "shocks the conscience" standard is *not* to be used, relies on two cases, *Gibbs v. Hopkins*, 10 F.3d 373 (6th Cir. 1993), and *Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989), as clearly establishing a prisoner's right to be free from retaliation for exercising First Amendment rights, and holds that the events at issue in *Bell* — a search of a prisoner's cell and confiscation of his legal papers and medical diet snacks — meet the threshold level of retaliation established in *Gibbs* and *Newsom*. *Bell*, 308 F.3d at 608-13. Therefore, *Scott II*'s statement regarding *Bell* is not a correct description of *Bell*'s holding. Scott argues that the prior panel's statement should nonetheless control when assessing whether Bair's actions were objectively unreasonable in the face of clearly established law. *Scott I* held explicitly that Scott could survive summary judgment on the merits of his claim under the *Thaddeus-X* standard; therefore, if *Scott II*'s assertion that the *Thaddeus-X* standard was the clearly established law of this circuit in 1988 is binding as law of the case, Bair's claim of qualified immunity necessarily fails, without further analysis.

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). However, the doctrine merely "directs a court's discretion, it does not limit the tribunal's power." *Id.*; *see also Gillig v. Advanced Cardiovascular Sys., Inc.*, 67 F.3d 586, 589-90 (6th

Cir. 1995). "In essence, the mandate rule is a specific application of the law-of-the-case doctrine." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). "The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." *Id.* The scope of a remand is determined by examining the entire order or opinion, to determine whether and how the court of appeals intended to limit a remand. *Id.* at 266-68. In the instant case, our opinion in *Scott I* had already determined that Scott's retaliation claim against Bair could survive summary judgment under the *Thaddeus-X* standard; had the panel of our court meant in *Scott II* to hold that the *Thaddeus-X* standard was the appropriate one to be used in gauging qualified immunity, our panel presumably would have remanded with instructions to deny Bair's motion and proceed to trial. Instead, the opinion as a whole makes clear that the district court is to reconsider Bair's motion "[i]n light of *Bell*." *Scott II*, 2003 WL 77208 at *2. "The issue presented by Scott [the appellant in *Scott II*], and resolved in *Bell*, is the applicability of the 'shocks the conscience' standard to prisoner First Amendment retaliation claims alleging conduct in 1995." *Id.* at *1. Given the discretionary nature of the law-of-the-case doctrine, the clear misstatement of *Bell*'s holding by *Scott II*, and the failure of Bair's qualified immunity claim under *Bell*'s actual holding, as detailed below, we decline to consider *Scott II*'s statement as binding upon the district court below or on this court now.

Finally, Scott cites to cases which take a dim view of a party's assertion that a previous panel opinion made a misstatement of law or fact in a subsequent appeal where no motion for reconsideration under Federal Rule of Appellate Procedure 40 was filed. *See Campbell v. United States*, 592 F.2d 309, 312 (6th Cir. 1979) (a party "may not ignore [Fed. R. App. P. 40]" and attempt to seek reconsideration of a ruling through subsequent litigation); *United States v. Gargotto*, 510 F.2d 409, 412 (6th Cir. 1974) ("In the absence of [a petition under Fed. R. App. P. 40], those issues cannot be re-considered"). These cases add little to Scott's initial

law-of-the-case argument:   Bair could have reasonably believed that the case was being remanded for briefing to the district court on the issue of qualified immunity in light of *Bell*, and not in light of the less than accurate statement of *Bell*'s holding in *Scott II*.

## D.  Qualified Immunity Under *Bell*

The district court in the instant case, after this court's first remand in *Scott I*, held that the clearly established law at the time of the incident was the "shocks the conscience" standard. On appeal, *Scott II* noted that *Bell* had effectively overruled that legal conclusion, and remanded for consideration in light of *Bell*.  *Bell* relied on two cases in concluding that behavior short of that which "shocks the conscience" was clearly established as unlawful in 1994, the time of the incidents in *Bell*: *Gibbs*, 10 F.3d at 378-80, and *Newsom*, 888 F.2d at 374-77.  In attempting to distinguish his case from *Gibbs* and *Newsom*, Bair first argues that *Gibbs* and *Newsom* provide no clear standard, and thus qualified immunity must be granted — an argument clearly foreclosed by *Bell*.  Bair then argues that neither case is factually similar to his, focusing on the type of adverse action taken — the filing of a false misconduct charge against the prisoner — rather than the protected conduct at issue. In *Gibbs*, plaintiff prisoner alleged that he was kept in administrative segregation as retaliation for his activities as a jailhouse lawyer, 10 F.3d at 378-80; in *Newsom*, plaintiff prisoners alleged that they had not been reappointed to their positions as inmate advisors in retaliation for complaints they had made about the Chairman of the Disciplinary Board, 888 F.2d at 374-77.  In attempting to distinguish the situation at bar from *Gibbs* and *Newsom*, Bair argues that Scott suffered no tangible harm.  But this argument is misguided:  Bair could not know at the time he committed the unconstitutional action, filing a misconduct charge, that Scott would be exonerated of that charge.  That Scott may have suffered less harm than other plaintiffs may be relevant in determining whether or not he has a claim on the merits of a constitutional violation, but that Bair's

unconstitutional action was ultimately unsuccessful does not make Bair's action any less unconstitutional.  Circumstances outside Bair's control stopped his attempt at retaliation from being perfected, but had Bair performed the exact same action and the hearing officer not cleared Scott of misconduct charges, Scott would have faced disciplinary segregation or the loss of good-time credits — which would necessarily be an actionable harm after *Gibbs*, where plaintiff made out a claim after having been kept in administrative segregation. Qualified immunity should be judged based on the actions of the officer and the reasonably foreseeable consequences of those actions, not subsequent events outside of the officer's control.  The injury actually suffered goes to the merits of the claim, the sufficiency of which to survive summary judgment is a settled question in this case.

Particularly destructive to Bair's claim that the type of adverse action he took against Scott is determinative is *Cale v. Johnson*, 861 F.2d 943, 948-51 (6th Cir. 1988).  *Cale*, which the *Bell* defendants relied upon, and which the *Bell* court took pains to distinguish, held that an officer's unsuccessful attempt to frame a prisoner through the filing of a false misconduct charge in retaliation for complaining about prison food was itself action "shocking to the conscience." Although Bair acknowledges that *Cale* is "remotely on point," he argues that it is "easily distinguishable" because in *Cale*, false evidence was planted on the prisoner, and in *Cale*, the prisoner was taken to administrative segregation pending his hearing.  Appellant's Br. at 19.  Bair's attempt to distinguish *Cale* factually is unconvincing — after *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), the distinction between attempting to frame an inmate for a misconduct charge by planting evidence on his person and attempting to frame an inmate by giving false testimony is one without a difference. ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.") *Id.* As to Cale's detention in administrative segregation, once again, Bair's argument goes to the harm Scott suffered, and thus to the ultimate determination of the merits of his claim, and not

to whether Bair's actions were unconstitutional in light of clearly established law. In *Cale* itself, our focus was not on the brief detention in administrative segregation which Cale suffered, but instead upon the "danger of further loss of liberty through disciplinary detention and through the loss of good-time credit as a result of the charges filed against him." 861 F.2d at 949-50; *see also id.* at 950-51 (in summation, noting only that Cale "was subject to the possibility of disciplinary sanctions and a resulting loss of liberty as a consequence of the alleged actions," and not adverting to administrative segregation). *Cale*, decided in 1988, clearly establishes that the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation. Even had the false misconduct charge been sustained against Cale, however, that case would still clearly establish that the false issuance of a misconduct charge is unconstitutional retaliation; that Bair did not do a particularly good job of framing Scott does not make his actions any less culpable, and events outside of his control (i.e., the hearing officer's ultimate determination) do not vitiate the "the danger of further loss of liberty" to which Bair subjected Scott. *See id.* at 949.

Despite *Cale*'s clear applicability, Bair claims that *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002), was the first case that would have given warning that his behavior was unconstitutional, and Bair notes the vigorous dissent in that case, arguing that as judges disagree on whether certain behavior was unconstitutional, he cannot be expected to know that such behavior was unlawful. The fatal flaw in this argument, however, is that the *Brown* case did not contain any of the specific evidence of retaliatory motive and deliberately falsified charges that Scott presents in the instant case, a fact noted even by the *Brown* dissent in distinguishing *Cale*. *See Brown*, 312 F.3d at 799 (Rosen, J., dissenting) (distinguishing *Cale* from *Brown* because *Cale* "feature[d] direct evidence of retaliatory conduct" and of the prison official's "active[] abuse[ of] his position of authority" by manufacturing evidence). Here, of course, Scott asserts, and Thomas

provides independent verification, that Bair deliberately framed Scott through false testimony, and that Bair did so with the specific intent of deterring Scott from asserting his First Amendment rights of grievance.

Under *Gibbs* and *Newsom*, which *Bell* directs this court to look to, and under *Cale* as well, Scott's right to be free from retaliation, in the form of the issuance of a false major misconduct ticket, against the exercise of his First Amendment rights was clearly established, and Bair is not entitled to qualified immunity.

## E. Other Issues Raised By the Parties

Bair argues on the last full page of his brief that is he is additionally entitled to qualified immunity on his conspiracy claim, which he also seems to argue was dismissed by the district court in an earlier stage of the litigation and never reinstated by the circuit court. *See Scott II*, 2003 WL 77208, at *1-*2 (noting civil conspiracy claim dismissed on basis other than qualified immunity but reversing district court's decision without limitation); *Scott v. Bair*, No. 1:95 cv 571, slip op. at 10-11 (W.D. Mich. Mar. 29, 2001), J.A. at 179, 188-89 (dismissing plaintiff's conspiracy claim on grounds other than qualified immunity). However, in denying qualified immunity, the magistrate judge's report and recommendation indicated that the conspiracy claims would proceed to trial. J.A. at 362. This report was adopted by the district court without comment on the conspiracy claim. *Scott v. Churchill*, No. 1:95 cv 571, slip op. at 2 (W.D. Mich. Oct. 3, 2003), J.A. at 466-67. Since Bair is not entitled to qualified immunity on Scott's First Amendment claim, it stands to reason he is not entitled to qualified immunity on Scott's conspiracy claim. As to whether the district court properly considered Scott's conspiracy claim to be reinstated, that issue is controlled by the mandate rule described above: given that the *Scott II* court reversed the entire decision and remanded to the district court for reconsideration, the district court did not abuse its discretion in reconsidering Scott's

conspiracy claim.  If the initial reasons for dismissing the conspiracy claim are not mitigated by the allowance of the First Amendment claim, Bair is free to again move for summary judgment on the merits of the conspiracy claim.

Finally, Scott claims that Bair's appeal is frivolous and vexatious, and he requests damages and costs because this appeal presents the same issue as *Scott II* with no change in the law or facts.  This is, on its face, a difficult contention to support.  While *Bell* had been decided before *Scott II* was argued, the *Scott II* court clearly wished to have the benefit of the district court's consideration of qualified immunity in light of *Bell* before a definitive circuit court pronouncement on the issue.  The district court having considered qualified immunity, Bair now appeals alleging legal error in that consideration.  While the legal issue may be the same in the broader sense — qualified immunity — the district court's decision clearly breaks new ground from *Scott II*, and Bair is entitled to appeal from that decision, especially in light of the policy considerations underlying qualified immunity.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.