NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0790n.06
Filed: November 13, 2007

No. 06-1622

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| David J. Scott, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| B. Stone, et al., | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: KEITH and ROGERS, Circuit Judges; ALDRICH, District Judge.[*]

**ROGERS,** Circuit Judge. Plaintiff David Scott, a Michigan prisoner proceeding *pro se*, appeals the district court's grant of summary judgment to defendants, all of whom are officials and employees with the Saginaw Valley Correctional Facility, in this civil rights action filed under 42 U.S.C. § 1983. Scott alleges that the defendant prison officials and employees conspired to file false major misconduct charges against him in retaliation for his use of the prison's grievance process. Scott's suit was referred to a magistrate judge, who recommended that defendants' motion for summary judgment be denied. Defendants filed timely objections to the magistrate judge's report

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

and recommendation, and the district court rejected the magistrate judge's recommendation and granted defendants' motion for summary judgment. Scott appeals the district court's grant of summary judgment. Because Scott has presented a genuine issue of material fact as to whether the major misconduct tickets constituted an unlawful retaliation and as to whether the defendants unlawfully conspired to retaliate against him, we reverse the district court's grant of summary judgment.

## I. Background

David Scott was transferred to the Saginaw Valley Correctional Facility on July 17, 2000, where defendant Bernadette Stone was Grievance Coordinator. In September of 2000, Scott was transferred to housing unit 800, where defendant Tracie Shaw was the Assistant Resident Unit Supervisor and defendants Michael Lewis and Jan Bigelow were resident unit officers. From August 2000 until Scott was transferred out of SVCF in February 2001, Scott filed 10 grievances and 123 proposed grievances. He claims that each of his 133 grievances "related to an ongoing pattern of abuse and retaliation from prison staff in housing unit 800." Scott was placed on "modified access status" to the grievance process on October 12, 2001, allegedly at Stone's request. Under this status, Scott was required to seek prior approval from Stone – in the form of a proposed grievance – before he was allowed to grieve an issue. Scott alleges that Stone processed all of his proposed grievances. On December 26, 2000, Scott's modified access status was extended through July 11, 2001, also allegedly at Stone's request.

Scott claims that the prison staff denied him sufficient writing paper and envelopes, and that he had resorted to using hand-made envelopes for his written correspondence. In particular, he claims that he removed masking tape from his prison footlockers and placed it on the envelopes containing the proposed grievances that he submitted to Stone from September 2000 until January 19, 2001. The tape had been placed on Scott's footlockers by prison personnel to transport his belongings between facilities.

Scott's suit is based largely on the events of January 19, 2001. Scott alleges that Stone called him into her office that day and expressed frustration about his use of the grievance process. He claims that Stone complained about the number of grievances he was filing, and about how long it took her to process them. Scott also alleges that Stone produced some of Scott's handmade envelopes and informed him that the masking tape securing them was considered a "dangerous tool" contraband when in Scott's possession. Scott informed Stone that he had obtained the tape from his footlockers. Scott claims that Stone threatened to deal with his use of the grievance process by having him transferred to a higher-security facility, allegedly stating that "this is going to end once and for all" and that "the only way to deal with you and your grievances is to increase your security level and transfer you to a higher security."

Scott claims that, upon leaving Stone's office, Scott was met by defendants Shaw, Lewis, and Bigelow and was told to wait outside Shaw's office. Scott claims that Stone then appeared and met with Shaw, Lewis, and Bigelow inside Shaw's office. Scott alleges that he then observed Stone

show the three other officers a misconduct ticket, at which point each officer proceeded to write a separate misconduct ticket—presumably against Scott.

It is undisputed that Scott received four major misconduct tickets on January 19, 2001: (1) a 3:55 p.m. ticket from Stone for possession of masking tape as a "dangerous tool"; (2) a 4:50 p.m. ticket from Shaw for "threatening behavior" toward another prisoner; (3) a 6:30 p.m. ticket from Lewis for possession of masking tape within Scott's cell; and (4) a 7:30 p.m. ticket from Bigelow for being "out of place." Lewis was the witness for Bigelow's "out of place" ticket, and Lewis assigned Scott to segregation pending a hearing on January 22, 2201. Scott alleges that each ticket was knowingly false. In addition to the tickets and retaliatory statements allegedly made by Stone, Scott claims that each of the other ticketing officers made incriminating and retaliatory statements: "your days of filing grievances are over" (Lewis); "seems you would learn that grievances cause you nothing but grief" (Shaw); "because of your grievances, you have no one to blame but yourself" (Bigelow).

On January 23, 2001, Hearing Investigator Scott Freed recommended that the Stone and Lewis tickets relating to Scott's possession of masking tape be dismissed, reasoning that prison personnel's use of the tape in packing Scott's footlocker implicitly authorized Scott to possess the tape. The prison Warden accepted Freed's recommendation and dismissed the two tickets.

Scott filed the present civil action under 42 U.S.C. § 1983, alleging that the defendant prison officials and employees conspired to file false major misconduct charges against him in retaliation

for his filing of lawsuits and grievances. His suit was referred to a magistrate judge, who recommended that the defendants' motion for summary judgment be denied on findings that, among other things: (1) Scott had alleged and proffered sufficient evidence to support a First Amendment retaliation claim; (2) Scott had alleged and proffered sufficient evidence to support a finding of an unlawful conspiracy to retaliate; and (3) the defendants were not entitled to qualified immunity. The defendants filed objections to the magistrate's recommendation, and the district court granted defendants' motion for summary judgment on determinations that Scott had not proffered evidence sufficient to support either a First Amendment retaliation claim or a conspiracy claim, and that the defendants were entitled to qualified immunity. *Scott v. Stone*, 2006 WL 543040, at *1 (E.D. Mich. 2006). Scott appeals the district court's grant of summary judgment. The defendant officials have not filed a brief for this appeal.

## II. Analysis

This court reviews a district court's grant of summary judgment *de novo*. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005).

### A. Scott's First Amendment retaliation claim

Scott has presented evidence from which a reasonable juror could find that the major misconduct tickets issued against him constitute an unlawful retaliation in violation of his First Amendment rights.

First, Scott was engaged in protected conduct, thus satisfying the first element of an unlawful retaliation claim. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). This court has held that the filing of non-frivolous grievances is protected conduct under the First Amendment. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

Second, an adverse action was taken against Scott that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *Thaddeus-X*, 175 F.3d at 394. It is undisputed that four major misconduct tickets were issued to Scott on January 19, 2001, and Scott claims that each ticket is knowingly false and for the purpose of retaliation.[1] "Charging an inmate with misconduct is an adverse action because serious consequences can flow from erroneous charges," even "when the charges are subsequently determined to be unfounded . . . ." *King v. Zamiara*, 150 Fed. App'x 485, 493-94 (6th Cir. 2005) (unpublished); *see also Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002); *Scott v. Churchill*, 2000 WL 519148, at *2 (6th Cir. Apr. 6, 2000) (unpublished).

Third, Scott has presented a genuine issue of material fact as to whether there exists a causal connection between his protected conduct and the adverse action taken. *See Thaddeus-X*, 175 F.3d

---

[1]Although Scott focuses mainly on the misconduct tickets in his appellate brief, the magistrate judge also emphasized that defendants threatened Scott and placed him in segregation. *See* Magistrate Judge's Report and Recommendation at 27-30.

at 394.  Summary judgment may only be rendered  "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The deciding court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "As the nonmoving party, it is Scott's version of the facts which must be relied upon."  *Scott v. Churchill*, 377 F.3d 565, 567 (6th Cir. 2004).

To avoid summary judgment on the causation element of a retaliation claim, the plaintiff must present evidence from which a reasonable jury could conclude that his protected conduct was a motivating factor behind the adverse action he suffered and that the officials would not have taken the adverse action in the absence of his protected activity.  *See Thaddeus-X*, 175 F.3d at 399.  Scott appears to have done so.  First, he has presented evidence from which a reasonable juror could conclude that his protected conduct was a motivating factor behind the adverse action that he suffered.  It is undisputed that Scott filed a high number of grievances, all of which he claims relate to an ongoing pattern of abuse and retaliation by prison staff.  It is also undisputed that he was issued four major misconduct tickets in one day – the same day, according to Scott, that defendant Stone called Scott into her office and expressed frustration over his grievances.  If Scott's version of the

facts is to be believed, Stone threatened to solve Scott's grievance problem by shipping him to a higher-security facility, and implicitly threatened him by noting that the masking tape he had used on his grievance envelopes was considered a "dangerous tool" contraband. Scott then allegedly witnessed Stone meet with Shaw, Lewis, and Bigelow, and observed Stone show the other three officers a misconduct ticket. Each officer proceeded to write up a separate misconduct ticket, and Scott did indeed receive four major misconduct tickets that day – one from each officer. Further, each officer allegedly made retaliatory statements to Scott, such as "your days of filing are over," "seems you would learn that grievances cause you nothing but grief," and "because of your grievances, you have no one to blame but yourself."

Scott has also presented sufficient evidence from which a reasonable juror could conclude that the officials would not have written the misconduct tickets in the absence of his protected activity. As Scott notes, mere possession of masking tape by a prisoner is not, in itself, a violation of prison regulations. Rather, only *unauthorized* possession of masking tape constitutes a violation. *See* Michigan Department of Corrections Policy Directives 03.03.105 and 04.04.120. Scott argues that the defendants were well aware of his authorization to possess masking tape. The magistrate judge noted Scott's claims that: (1) Stone had been receiving homemade envelopes from Scott, with tape on them, for at least four months prior to issuance of the tickets; (2) before Stone wrote her masking tape ticket, Scott explained that he had obtained the tape from his prison footlockers; (3) any contraband status of the tape ceased to exist at the time Scott relinquished possession of the tape by mailing the envelopes to Stone; (4) upon Scott's arrival in housing unit 800 in September 2000,

Shaw examined his footlockers and released them to Scott with the tape on them; (5) the defendants were fully aware of the tape on Scott's lockers through routine property shakedowns conducted at least five times between September 2000 and January 2001 by defendants Bigelow and Lewis; and (6) all defendants knew that the tape placed on Scott's lockers had been placed there by prison staff. *See* Magistrate Judge's Report and Recommendations at 31-32, 37-38. Scott asserts that "[i]t would be difficult, if not impossible, to find even one prisoner without tape affixed to something in [his/her] possession," and that "[d]efendants singled [Scott] out and issued unfounded tickets against him." *Id*. It is also noteworthy that Hearing Investigator Freed later dismissed these tickets on a theory of implicit authorization. A reasonable jury could conclude from these facts that the defendants were, in fact, aware of Scott's authorization to possess masking tape, which raises a genuine issue of material fact as to whether Stone and Lewis would have written Scott's masking tape tickets in the absence of his numerous grievances.

Additionally, Scott alleges that the conduct underlying Shaw's "threatening behavior" and Bigelow's "out of place" tickets occurred prior to the retaliation conspiracy that Scott alleges, contrary to the apparent assumption of the district court. While it is unclear exactly when the conduct underlying the "out of place" ticket occurred in relation to the conspiracy Scott alleges, it is clear from the record that Scott's allegedly "threatening behavior" did, indeed, occur the night before the alleged conspiracy. Of course, such a delay between the underlying conduct and the writing of tickets does not necessarily mean that the defendants wrote the tickets in retaliation against Scott for the exercise of his First Amendment rights. In the context of Scott's other

allegations, however, this timing supports the existence of a genuine issue of material fact regarding whether Shaw and Bigelow would have written the tickets in the absence of Scott's numerous grievances.

While "the summary judgment hurdle is not insubstantial," *Thaddeus-X*, 175 F.3d at 399, we conclude that Scott's allegations present genuine issues of material fact as to whether Scott's protected conduct was a motivating factor behind the misconduct tickets and whether the officials would have issued the tickets in the absence of his numerous grievances. "Circumstantial evidence, like the timing of events . . . is appropriate." *Id.* Consequently, we find it necessary to reverse the district court's grant of summary judgment for defendants on Scott's retaliation claim.

**B. Scott's conspiracy claim**

For the same reasons that Scott has presented a triable issue of fact regarding his retaliation claim, he has also presented a triable issue of fact regarding his conspiracy claim. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). If Scott's story is to be believed, as it must be for purposes of ruling on a summary judgment motion, he has alleged sufficient facts from which a rational jury could conclude that the defendants agreed to violate his civil rights; that the defendants shared in the conspiratorial objective; and that an overt act was committed in furtherance of the conspiracy. *See id.* "Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, . . . circumstantial evidence may provide adequate

proof of conspiracy." *Id*. at 528. Scott's conspiracy claim is likely dependent, however, on his succeeding on his First Amendment retaliation claim. *See Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003) ("To demonstrate conspiracy under § 1983, plaintiff must show an actual abridgement of some federally-secured right."(internal quotations omitted)); *Vaden v. Village of Maywood, Ill*., 809 F.2d 361, 366 (7th Cir. 1987) ("To state a claim for relief under [§ 1983], [plaintiff] must allege not only that the defendants conspired under color of state law to deprive her of her constitutional rights, but also that she was in fact deprived of those rights.").

**C. Qualified immunity**

The defendants have also not established that they are entitled to qualified immunity. Civil rights defendants enjoy qualified immunity from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To avoid a qualified immunity defense, Scott must "present evidence sufficient to create a genuine issue as to whether the defendant[s] in fact committed the acts that violated the law." *See Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994). In addition, Scott must "state a claim of the violation of clearly established law." *See id.* For the reasons stated above, he has done both. This court has previously held that—at least as of 1995—a prisoner's "right to be free from retaliation, in the form of the issuance of a false major misconduct ticket, against the exercise of his First Amendment rights" is clearly established for purposes of qualified immunity. *See Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004).

Accordingly, Scott has cleared the hurdles imposed by qualified immunity at the summary judgment stage.

### III. Conclusion

For the foregoing reasons, we reverse the district court's grant of defendants' motion for summary judgment and remand Scott's § 1983 claims.