RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

AUDIO TECHNICA U.S., INC.,

*Plaintiff-Appellee*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellant*.

No. 19-3469

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:16-cv-02052—John R. Adams, District Judge.

Argued:  June 9, 2020

Decided and Filed:  June 26, 2020

Before:  CLAY, ROGERS, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Ellen Page DelSole, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Jeremy M. Fingeret, ZERBE, MILLER, FINGERET, FRANK, & JADAV, P.C., Houston, Texas, for Appellee.  **ON BRIEF:**  Ellen Page DelSole, Randolph L. Hutter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Jeremy M. Fingeret, John H. Dies, Robert G. Wonish, Jefferson H. Read, ZERBE, MILLER, FINGERET, FRANK, & JADAV, P.C., Houston, Texas, for Appellee.

_____

## OPINION

_____

CLAY, Circuit Judge.  In this tax refund suit, Audio Technica U.S., Inc. contends that it was entitled to a tax credit for increasing research and development activities under 26 U.S.C.

§ 41 (the "R&D tax credit").  The R&D tax credit is available when taxpayers increase certain research expenses over time, with the increase measured in part against research costs from the five-year period from 1984 through 1988, taken as a percentage of the company's gross receipts during those years.  26 U.S.C. § 41(c)(3)(A).  This number is called the fixed-base percentage. *Id.*

The government attempted to challenge Audio Technica's preferred fixed-base percentage, but Audio Technica moved to bar the government from making any such argument to the jury.  The district court agreed with Audio Technica, finding that because the government had entered into tax court settlements with Audio Technica for other tax years using that same fixed-base percentage, it was judicially estopped from now arguing that the percentage was incorrect.  Because judicial estoppel is not triggered by such a settlement, we vacate the district court's judgment, reverse the order granting Audio Technica's motion in limine, and remand for a determination of Audio Technica's fixed-base percentage.

**BACKGROUND**

Audio Technica is a company headquartered in Stow, Ohio, that makes high-end audio equipment such as microphones and mixers for both professional and consumer use.  Based on its development of this technology, Audio Technica claimed the tax credit for increasing research activities under 26 U.S.C. § 41, including for the 2006 to 2010 tax years at issue in this lawsuit.[1] Under that R&D tax credit, a taxpayer is entitled to a credit equal to twenty percent of the amount that its qualified research expenses for the year exceed something called the "base amount."  26 U.S.C. § 41(a)(1).  And so, the higher a taxpayer's qualified research expenses that year, and the lower its base amount, the greater the tax credit.

As might be expected with the Internal Revenue Code, the base amount is calculated in a somewhat convoluted fashion.  First, the taxpayer calculates its average gross receipts for the previous four years.  *Id.* § 41(c)(1)(B).  It then multiplies this number by another figure called the "fixed-base percentage."  *Id.* § 41(c)(1)(A).  That number—the fixed-base percentage—in turn is

---

[1]Audio Technica's tax years end on March 31.  For convenience, we refer to these by the calendar years in which the tax years ended.

determined by adding up the taxpayer's total qualified research expenses for all tax years beginning in the five-year period from 1984 to 1988, and then dividing that number by the taxpayer's aggregate gross receipts for that same period. *Id.* § 41(c)(3)(A). There are other methods that can be used in limited circumstances, such as for companies that were not in operation during the 1980s, *see id.* § 41(c)(3)(B), but the parties agree that the general method described above applies in this case. The important part is that the lower the taxpayer's fixed-base percentage, the higher its R&D tax credit.

In addition to the 2006–2010 tax years at issue here, Audio Technica also claimed the credit for the 2002–2005 tax years, as well as the 2011 tax year. The IRS disagreed and issued Audio Technica a notice of deficiency, essentially saying that it was not entitled to the credit amounts it claimed, and so Audio Technica filed a petition for review with the United States Tax Court.

Rather than litigate the Tax Court proceedings through trial, Audio Technica and the government reached agreements to settle those cases, which were approved by the Tax Court. These settlements did not address the details of the parties' dispute; rather, they (1) listed the dollar amounts of the agreed-upon deficiencies by tax year, in the case of the 2002–2005 dispute, or (2) stated the total dollar amount of Audio Technica's research credit, in the case of the 2011 dispute. But according to Audio Technica, these amounts were determined by the parties through their "specific agreement" as to Audio Technica's fixed-base percentage, namely .92%. (Mem. in Support of Mot. in Limine, R. 80-1 at PageID #1126.)[2]

With respect to the 2006–2010 tax years, instead of litigating the issue in Tax Court, Audio Technica paid the amount requested by the IRS and sued in the Northern District of Ohio for a refund. As the case was about to proceed to trial, Audio Technica filed a motion in limine arguing that the government was judicially estopped from claiming that the .92% fixed-base percentage did not apply in this case. Specifically, Audio Technica said that the IRS had "twice

---

[2]Audio Technica provided some more detail on this point: "The Taxpayer and Government's computation for the Fixed Base Percentage equaled 0.9266%. The Government in the final Stipulation of Facts rounded the Fixed Base Percentage down to 0.92%. The Taxpayer in its filings for each year relied upon this prior settlement and utilized the agreed upon Fixed Base Percentage of 0.92%." (Mem. in Support of Mot. in Limine, R. 80-1 at PageID #1127 n.2.)

previously agreed to stipulated settlements recognizing that [Audio Technica's] fixed base percentage of .92% for the 1984 to 1988 base period was correct." (Mem. in Support of Mot. in Limine, R. 80-1 at PageID #1127.) Because of this, Audio Technica said, "the doctrines of judicial estoppel and general principles of equity and fairness" required that the government "be estopped from introducing any evidence or asserting a position different than it agreed to with regard to the Fixed Base Percentage in the instant matter." (*Id.*) With respect to the requested remedy, the motion asked for an order prohibiting any argument or reference to the jury "that the 80's base calculation or fixed base percentage should be any alternative amount other than the amounts claimed by Plaintiff or [that] were accepted in the prior 2010 litigation between Plaintiff and Defendant." (Mot. in Limine, R. 80 at PageID #1122–23.)

The district court granted this motion, holding that because the government "agreed to settlements with results derived through a stipulated, fixed base percentage of .92%," and because these settlements were "accepted and signed by the Tax Court," the government was barred from arguing that another percentage might apply in this case. (Order Granting Mot. in Limine, R. 114 at PageID #1345–46.) And while the government had argued that the .92% figure "was a compromise position" reached through negotiation, the court found that it had "consistently allowed this same basis of .92% to be used to resolve similar tax issues in dispute here," meaning that judicial estoppel applied. (*Id.* at #1346.)

After this motion practice, the case went to trial, and the jury largely found in favor of Audio Technica. The verdict form did not include any questions about the fixed-base percentage and did not ask the jury to calculate the amount of Audio Technica's resulting tax credit. Rather, the form asked the jury whether certain projects for each tax year counted as qualified research and development activities, and if so, what amount of qualified research expenses was reasonable for each of them. The court then issued a preliminary judgment in favor of Audio Technica and directed it to propose a supplemental final judgment detailing its relief.

As requested, Audio Technica filed a proposed final judgment, which noted that the fixed-base percentage from the Tax Court proceedings was .92% and calculated the total amounts for R&D tax credits it was owed in certain of the tax years at issue. This in turn showed an overpayment of tax in the 2008 tax year, and so the proposed judgment awarded Audio

Technica a $40,432 refund.  It also found that "Audio Technica has substantially prevailed on the primary issues in dispute, and is thereby awarded its reasonable court costs."  (*Id.* at #2501.)

The government filed objections to Audio Technica's proposed judgment.  Most notably for this appeal, the government complained that it was unclear whether the judgment's costs award was made under the standard court-costs provision of 28 U.S.C. § 1920, or the tax-specific provision of 26 U.S.C. § 7430.  This distinction mattered because § 7430 has heightened requirements for prevailing parties—including a cap on net worth—but also carries heightened benefits, such as allowing an award of reasonable attorney's fees.  Because Audio Technica's net worth exceeded the $7,000,000 cap for corporations, the government said the company was not entitled to an award under § 7430.[3]

The district court did not address the government's objections, and instead signed the proposed final judgment without changes.  Audio Technica then moved for costs, specifically claiming costs under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  While this request was pending, the government filed its notice of appeal.  About two months later, the district court granted Audio Technica's request for costs in part, and specifically noted that the request and order were entered pursuant to Rule 54(d) and 28 U.S.C. § 1920.  *Audio Technica U.S., Inc. v. United States*, No. 5:16-CV-2052, 2019 WL 3213049, at *1 (N.D. Ohio July 17, 2019).

On appeal, the government raises two issues.  First, it says that the district court erred in holding that it was judicially estopped from challenging the .92% fixed-base percentage.  Second, while the government believes that the costs order is properly construed as having been made under 28 U.S.C. § 1920, it appealed that order to the extent it could be construed as an award under 26 U.S.C. § 7430—a precautionary appeal to avoid the chance of being later blindsided with an attorney's fee award after forfeiting the right to appellate review.  In response, Audio Technica says that the district court got it right on judicial estoppel, that the government lost its right to appeal by not making an offer of proof as to what evidence would have shown a different fixed-base percentage, and that any error was harmless because even under the district

---

[3]The government also argued that Audio Technica was not a prevailing party, and therefore was not entitled to costs even under 28 U.S.C. § 1920, but it dropped that argument on appeal.

court's order, the government could still have argued that Audio Technica failed to meet its burden of proof, and no evidence in the record showed that a different percentage applied. Audio Technica also says that it agrees the costs order was entered under 28 U.S.C. § 1920, and so any dispute on that issue is moot.

## DISCUSSION

## Motion In Limine

The government's main argument on appeal is that the district court erred in finding that the government was judicially estopped from challenging Audio Technica's use of the .92% fixed-base percentage. For the reasons that follow, the government is correct: a court order memorializing a settlement agreement generally does not constitute judicial acceptance of the facts underpinning that agreement, and in any event, the orders approved by the Tax Court did not actually include the .92% rate. And while Audio Technica claims that this error was harmless and that the government waived its right to appellate review, these arguments lack support both in the record and the law. Accordingly, we vacate the district court's judgment and reverse its judicial estoppel order.

### A. Standard of Review

Audio Technica argues that the district court's order, as a motion in limine, must be reviewed under the forgiving abuse-of-discretion standard. While true that motions in limine are generally reviewed for an abuse of discretion, *e.g.*, *Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013), we have repeatedly held that judicial estoppel rulings are reviewed de novo, *e.g.*, *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014); *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008); *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). Even if the abuse-of-discretion standard did apply in this case, our review would still be de novo, as whether judicial estoppel applies to the fixed-base percentage based on the Tax Court settlements is a question of law. *See, e.g.*, *Howe v. City of Akron*, 723 F.3d 651, 658 (6th Cir. 2013) ("Under the abuse-of-discretion standard, findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo." (citation omitted)); *see also United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (noting that an abuse of discretion occurs

when the district court "improperly applie[s] the law" (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002))); *United States v. Levy*, 904 F.2d 1026, 1029 (6th Cir. 1990) ("Alleged 'evidential errors of a trial court are tested on appeal' under an abuse of discretion standard.  However, a district court's conclusions of law, such as whether proffered evidence constitutes hearsay within the meaning of the Federal Rules of Evidence, are reviewed de novo." (citation omitted) (quoting *United States v. Rios*, 842 F.2d 868, 872 (6th Cir. 1988) (per curiam))).

Furthermore, while not directly addressed in the parties' briefing, it was improper for the district court to consider judicial estoppel within the context of a motion in limine.  Rather than addressing the admissibility of certain pieces or types of evidence, Audio Technica's motion asked the court to bar the jury from hearing one side's argument, essentially granting them judgment as a matter of law on that point.  Such non-evidentiary legal issues must be decided in the context of a motion for summary judgment, *Louzon v. Ford Motor Co.*, 718 F.3d 556, 562–63 (6th Cir. 2013), which in turn is reviewed de novo, *e.g.*, *King v. United States*, 917 F.3d 409, 421 (6th Cir. 2019).  Accordingly, we apply de novo review in this case.

## B. Application of Judicial Estoppel to the Tax Court Settlements

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'"  *Browning*, 283 F.3d at 775 (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000))).  The purpose of the doctrine is to protect the integrity of the judiciary by preventing a party from convincing two different courts of contradictory positions, which would mean that one of those two courts was deceived. *Browning*, 283 F.3d at 776.  For this reason, courts will typically apply judicial estoppel only where "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create

'the perception that either the first or the second court was misled.'" *New Hampshire*, 532 U.S. at 750 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)); *accord Teledyne*, 911 F.2d at 1218.

Judicial estoppel must be "applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne*, 911 F.2d at 1218; *accord Lorillard*, 546 F.3d at 757. Therefore, the doctrine only applies when the positions at issue are clearly contradictory, *New Hampshire*, 532 U.S. at 750, and the estopped party's conduct involves "more than mistake or inadvertence," *Browning*, 283 F.3d at 776. Additionally, judicial estoppel is construed even more narrowly when requested against the government. *United States v. Owens*, 54 F.3d 271, 275 (6th Cir. 1995).

Judicial estoppel cannot apply in this case because the Tax Court litigation was resolved through a settlement, meaning there was no judicial acceptance of the government's position. "Settlements, even in the form of an agreed order, ordinarily do not constitute judicial acceptance of whatever terms they contain." *Teledyne*, 911 F.2d at 1219. This is because judicial estoppel turns on the estopped party's having successfully convinced the earlier court that it was right. But "[i]f the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted." *Edwards*, 690 F.2d at 599; *see also City of Kingsport v. Steel & Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir. 1974) ("[B]ecause of the settlement of plaintiffs' case, the defense of the bar of the statute of limitations was never decided, and therefore no estoppel can possibly exist.").

Audio Technica tries to escape this precedent through *Reynolds v. Commissioner*, 861 F.2d 469 (6th Cir. 1988), a case that applied judicial estoppel to terms asserted in a settlement that was approved by the bankruptcy court. But in *Reynolds*, our holding turned on the unique nature of bankruptcy settlements, where negotiated agreements must still be carefully examined by the court to protect the interests of third parties:

> In bankruptcy proceedings, as distinguished from ordinary civil cases, any compromise between the debtor and his creditors must be approved by the court as fair and equitable. In considering a proposed compromise, the bankruptcy

court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable. The court is not permitted to act as a mere rubber stamp or to rely on the trustee's word that the compromise is "reasonable."

*Id.* at 473 (citations omitted) (quoting *In re Am. Reserve Corp.*, 841 F.2d 159, 162 (7th Cir. 1987)).

This bankruptcy-specific review easily distinguishes *Reynolds* from the instant case. As the Court there explained:

When an ordinary civil case is settled, there is no "judicial acceptance" of anyone's position and thus there can be no judicial estoppel in a later proceeding. But when a bankruptcy court—which must protect the interests of all creditors— approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient "judicial acceptance" to estop the party from later advancing an inconsistent position.

*Id.*; *see also Teledyne*, 911 F.2d at 1219 ("[T]he stipulation in *Reynolds* was approved by a bankruptcy court in a bankruptcy proceeding, where the court had a duty to ensure that the agreement was fair and equitable, unlike an ordinary civil case.").[4] Because the Tax Court proceedings ended with a settlement between the parties, which did not require judicial acceptance of their litigation positions, judicial estoppel cannot attach.

Furthermore, even if the settlements could have allowed for judicial estoppel, the Tax Court never relied upon or adopted the agreed-upon fixed-base percentage when it approved the settlements in this case. Neither of the stipulated decisions filed with the court includes the .92% fixed-base percentage or any other reference to the proper calculation of the tax credit. Rather, those agreements listed only total dollar amounts, either that Audio Technica owed the IRS in deficiencies or that the IRS owed Audio Technica in credits.

---

[4]The specific factual inconsistency in *Reynolds* further distinguishes it from this case. There, the IRS asserted in a bankruptcy proceeding that certain amounts were taxable to Mrs. Reynolds and negotiated a settlement with her, but then claimed in a later proceeding that the exact same amounts were taxable to her ex-husband instead. 861 F.2d at 470–73. This sort of double-dipping is a far cry from the facts here, where the government agreed to a negotiated fixed-base percentage as part of a settlement for some tax years, but wants the right to challenge that figure in other years where Audio Technica did not agree to settle. *Cf. Teledyne*, 911 F.2d at 1219 ("Unlike *Reynolds,* the agreed orders in this case contain no admissions or findings of law or fact.").

Even if the parties, working behind the scenes, came up with these settlement figures by using the .92% rate, the Tax Court was none the wiser. Accordingly, the Tax Court could not have accepted the .92% fixed-base percentage as part of those proceedings, and so the government cannot be judicially estopped from arguing that Audio Technica failed to show this percentage is correct.

## C. Offer of Proof and Harmless Error

Audio Technica argues that even if the district court's ruling was in error, there are two additional reasons why this Court should affirm. First, Audio Technica says that the government waived its right to appellate review by failing to submit an offer of proof, a requirement under the Federal Rules of Evidence. Second, Audio Technica claims that any error was harmless, both because the government did not produce any evidence supporting an alternative fixed-base percentage and because the district court's order did not actually bar the government from arguing that Audio Technica failed to adequately support the .92% rate.

Audio Technica is correct that under the Federal Rules of Evidence, in order to preserve the issue for appeal, a party objecting to an order excluding evidence must "inform[] the court of [the evidence's] substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a)(2); *cf. Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 492 (6th Cir. 1995) (applying Rule 103 to a mid-trial order sustaining an objection to certain questions from counsel). But here, the district court's order did more than just exclude evidence; it barred the government from arguing to the jury that any other calculation was correct, even using Audio Technica's own evidence or admissions made on cross-examination.

A look to the rest of the record confirms that the district court's order was not simply an exclusion of evidence, but rather a ruling for Audio Technica on the fixed-base percentage issue as a matter of law. The jury was not asked about Audio Technica's 1980s research expenditures or any other matter related to the fixed-base percentage; the verdict form asked only whether Audio Technica made qualified research expenditures during the 2000s tax years at issue, and if so, how much. Instead, in its final judgment, the district court itself calculated the credit amount using the .92% fixed-base percentage. An order that goes beyond evidentiary questions and

instead resolves an issue as a matter of law is not "a ruling to . . . exclude evidence," Fed. R. Evid. 103(a), and so Rule 103 does not apply.

Audio Technica's harmless error argument fails for largely the same reasons. While Audio Technica says that the government failed to present any evidence supporting a different fixed-base percentage, this ignores the fact that Audio Technica carried the burden of proving its eligibility for the credit, and Audio Technica points to no evidence in the record that supports its preferred fixed-base percentage. "Federal statutes that grant tax deductions [and credits] 'are matters of "legislative grace" and are strictly construed in favor of the government.' Therefore, taxpayers carry the burden of proving that they are entitled to tax deductions and credits." *Crooks v. Comm'r*, 453 F.3d 653, 655 (6th Cir. 2006) (order) (citation omitted) (quoting *Chrysler Corp. v. Comm'r*, 436 F.3d 644, 654 (6th Cir. 2006)).

Audio Technica presents this issue as a battle between two competing numbers—Audio Technica's and the government's—but this is not an accurate understanding of the case. Although the government carries the burden on appeal of showing that it was prejudiced as a result of the district court's erroneous ruling, *see Shinseki v. Saunders*, 556 U.S. 396, 409–10 (2009), properly assigning the burden of proof below, the question was whether Audio Technica established by a preponderance of the evidence that its favored percentage is correct. This does not come down to a choice between two battling possibilities, and so the government was not obligated to offer its own alternative figure in order to challenge Audio Technica's. The government should have been allowed to cross-examine Audio Technica's witnesses regarding the fixed-base percentage and to argue that Audio Technica failed to meet its burden of proof; the district court's order prejudiced the government by preventing it from doing so.

Audio Technica takes issue with this last point, saying that even with the district court's order, the government could still have argued that Audio Technica failed to meet its burden of proof. But this is belied by the text of Audio Technica's own motion, which the district court granted in full. In that motion, Audio Technica asked "the Court to instruct counsel not to mention within the hearing of any member of the jury panel at any time, whether in voir dire examination, upon reading of the pleadings, upon statement of the case, *by interrogation of the witnesses, or by any argument* or through any other person or entity whether a witness or

otherwise," anything suggesting that the .92% rate was not correct.  (Mot. in Limine, R. 80 at PageID #1122–23 (emphasis added).)  And the district court's order itself noted that the motion sought to preclude any reference to this issue in front of the jury, and so it flatly barred the government "from arguing that another basis should be used."  (Order Granting Mot. in Limine, R. 114 at PageID #1345–46.)[5]

As mentioned above, the verdict form and judgment in this case further confirm that the government was prevented from putting on a case with respect to the fixed-base percentage, given that the judgment incorporated the .92% rate and calculated the credits using that "applicable fixed base percentage[]," essentially holding that Audio Technica's preferred figure applied as a matter of law.  (Final J., R. 144 at PageID #2891–94.)  Audio Technica cannot square this fact with its argument that the district court's order was a limited evidentiary ruling.  Because Audio Technica was completely relieved of its burden to present evidence in support of the .92% fixed-base percentage, the government was inherently prejudiced by being barred from arguing that this lack of evidence required the rejection of Audio Technica's claims.  The district court's error thus was not harmless, and so we must vacate its judgment and reverse the court's ruling on Audio Technica's motion.

**Costs Order**

In addition to the motion in limine, the government also appeals the district court's costs order to the extent that the award was made under the tax-specific provision of 26 U.S.C. § 7430, as opposed to the standard costs provision of 28 U.S.C. § 1920.  Because we vacate the district court's judgment for the reasons discussed above, this issue is moot, as Audio Technica is no longer a prevailing party (at least unless and until the district court again issues a judgment in its favor).

---

[5]Audio Technica points to several portions of the trial transcript that it claims demonstrates the government's ability to argue that the fixed-base percentage was not supported by the record and to cross-examine witnesses about the issue.  But this is not an accurate representation of the record.  While the government argued that Audio Technica had failed to meet its burden of proof, it did not do so with respect to the fixed-base percentage issue—a strategy that would have been directly at odds with the trial court's order.  Similarly, the witness testimony Audio Technica points to shows only that a witness mentioned the fixed-base percentage issue when asked about the IRS's examination; in line with the court's order, the government did not explore Audio Technica's factual support for using the .92% rate.

In any event, both parties agree that the district court's award was made under the standard costs provision of 28 U.S.C. § 1920, and the context of these proceedings leaves no doubt that this was the case. Audio Technica is plainly ineligible for an award under § 7430 because its net worth exceeds the statutory cap. *See* 26 U.S.C. § 7430(c)(4)(A)(ii); 28 U.S.C. § 2412(d)(2)(B). And after final judgment was entered, the district court's order granting Audio Technica's request for costs clearly specified that the award was made under 28 U.S.C § 1920, and not the tax provision found at 26 U.S.C. § 7430. *Audio Technica*, 2019 WL 3213049, at *1.

## Scope of Remand

The final issue we must address is the scope of the remand in this case. As discussed above, the jury already determined the amounts of Audio Technica's research activities for the 2000s tax years at issue in this litigation. The district court then used these amounts, combined with the .92% fixed-base percentage, to calculate Audio Technica's resulting tax credit.

At oral argument, the parties agreed that these earlier findings of the jury should be left undisturbed, and so the only issue on remand should be the determination of Audio Technica's fixed-base percentage. Accordingly, we limit our remand of this case to a factual determination of Audio Technica's fixed-base percentage, either through summary judgment or through a jury trial if the parties present a genuine dispute of material fact following adequate discovery. *See Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004); *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). After this determination is made, the district court can then enter a final judgment applying this fixed-base percentage to the jury's earlier findings and awarding appropriate relief.

## CONCLUSION

For the reasons stated above, we vacate the district court's judgment, reverse its order granting Audio Technica's motion in limine, and remand this case for a determination of Audio Technica's fixed-base percentage.