NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0137n.06

No. 13-1286

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JARED RAPP; MOTI GOLDRING, | ) | |
| | ) | **FILED** |
| Plaintiffs-Appellants, | ) | Feb 18, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| ROBERT DUTCHER; ANNETTE IRWIN; CITY | ) | ON APPEAL FROM THE |
| OF EAST LANSING, a Michigan municipal | ) | UNITED STATES DISTRICT |
| corporation; THOMAS YEADON; DOUGLAS | ) | COURT FOR THE WESTERN |
| STOVER; EAST LANSING CITY CENTER | ) | DISTRICT OF MICHIGAN |
| CONDOMINIUM ASSOCIATION, a Michigan non- | ) | |
| profit corporation, | ) | |
| | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: COLE and GRIFFIN, Circuit Judges; and PEARSON, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiffs Jared Rapp and Moti Goldring jointly own a condominium in the City of East Lansing, Michigan, and rented it out without a landlord license in violation of certain municipal ordinances. As a result, the City issued plaintiffs 173 citations. The state court held plaintiffs responsible for all citations and ordered them to pay $45,480 in fines. While the state court proceedings were ongoing, plaintiffs filed the instant federal case against defendants alleging a

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

variety of constitutional and state law claims relating to the ordinance enforcement. The district court granted defendants' motions to dismiss; we affirm.

I.

In the summer of 2008, plaintiffs Jared Rapp and his second cousin Moti Goldring each owned a one-half interest of a residential condominium unit in East Lansing, Michigan. Plaintiffs—both lawyers—traveled considerably for their work. If a property owner in the City wants to rent their property to more than one person, the owner must obtain a rental license. *See* East Lansing, MI, Code of Ordinances, pt. II, ch. 6, art III, §§ 1010.1-1010.2. Plaintiffs do not hold, nor have ever held, a rental license for their condo.

In September of 2008, defendant Douglas Stover, president of defendant East Lansing City Center Condominium Association ("ELCCCA"), told the City that he believed that plaintiffs were illegally renting their condo without a license. The City subsequently began an investigation.

On November 1, 2009, City police were called to plaintiffs' condo for a noise complaint. Police officers encountered two residents at the condo other than plaintiffs, and issued them citations for noise violations and for being minors in possession of alcohol. Sometime between then and January 2010, the citations were forwarded to the City's code enforcement division. As a result, in January 2010, defendant Robert Dutcher, a code enforcement officer for the City, visited the condo to speak with the owners and further investigate Stover's earlier allegations. Dutcher spoke with three individuals at the condo, none of which were plaintiffs.

Based on Dutcher's observations during his visit, on March 15, 2010, the City issued one citation to each plaintiff for violating the rental license ordinances on November 1, 2009. Plaintiffs promptly hired an attorney and met with defendant Annette Irwin, another code

enforcement officer for the City, and defendant Thomas Yeadon, the prosecuting attorney, to discuss the citations. The parties could not resolve their dispute over the applicability of the rental license ordinances to plaintiffs' circumstances. After the meeting, on March 29, 2010, the City served each plaintiff with an additional 85 citations, one for each day they were in violation of the rental ordinance (from November 2, 2009, through January 25, 2010).[1]

Plaintiffs challenged the citations in a Michigan district court. After a three-day hearing where the court considered witness testimony, oral argument, and briefing, the court issued a written order and opinion ruling that plaintiffs had violated the City's rental license ordinances. The district court ordered plaintiffs to pay $300 per citation, in addition to certain costs established by state law, for a total of $53,300. Plaintiffs appealed as of right to a Michigan circuit court.

During the pendency of that appeal, plaintiffs filed—but did not serve—a 179-count complaint against defendants in federal court. Counts 1 through 173—one count for each of the disputed citations issued, each count labeled "Abuse of Process – 42 USC § 1983"—alleged that the City, Dutcher, Irwin, and Yeadon had numerous "ulterior purposes" in issuing the citations to plaintiffs that were unrelated to ordinance enforcement. Count 174 alleged a state-law nuisance claim against Stover and the ELCCCA. Count 175 alleged a civil conspiracy claim against all defendants under 42 U.S.C. § 1983. Count 176 alleged an equal protection claim under 42 U.S.C. § 1983 against the City, Dutcher, Irwin, and Yeadon. Count 177 alleged an "Excessive Fines – 42 USC § 1983" claim against the City, Dutcher, Irwin, and Yeadon. Count 178 alleged

---

[1]The ordinance provides for a separate violation for every day a violation of the ordinance occurs. *See* East Lansing, MI, Code of Ordinances, pt. II, ch. 6, art III,§ 1010.10.

a state-law civil rights claim against Stover and the ELCCCA. And Count 179 alleged an "Exemplary Damages" claim against all defendants.

While plaintiffs' federal complaint remained filed but not yet served, the state circuit court issued a written opinion affirming the state district court's finding that plaintiffs violated the rental license ordinances. However, the circuit court agreed with plaintiffs' argument that the amount of fines levied against them violated the excessive fines clause of the Eighth Amendment and therefore remanded the case for a redetermination of fines. One week after the state circuit court issued its opinion, plaintiffs served their federal complaint on all defendants. Plaintiffs then filed an application for leave to appeal the state circuit court's opinion with the Michigan Court of Appeals, which was denied. Plaintiffs subsequently filed an application for leave to appeal with the Michigan Supreme Court, which was also denied. *City of E. Lansing v. Rapp*, 830 N.W.2d 395 (Mich. 2013). Plaintiffs then filed a petition for a writ of certiorari with the United States Supreme Court, which was denied. *Rapp v. City of E. Lansing, Mich.*, 134 S. Ct. 522 (2013).

On remand from the state circuit court, the state district court issued a new order, imposing only the minimum fines allowed under the rental ordinance—$250 per citation—and state-ordered costs, for a total of $45,480. Plaintiffs appealed; the state circuit court affirmed. Plaintiffs then filed an application for leave to appeal the state circuit court's opinion with the Michigan Court of Appeals, which was denied. *City of E. Lansing v. Jared Rapp*, No. 315433 (Mich. Ct. App. Dec. 6, 2013) (order).

After the state circuit court affirmed the $45,480 fine entered on remand, defendants moved for dismissal of plaintiffs' federal complaint under Rule 12(b)(1) and (6), or for summary

judgment under Rule 56. The district court granted defendants' Rule 12(b) motions, and plaintiffs timely appealed.

## II.

"We review a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) de novo." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012). "When the defendant challenges the existence of subject-matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists." *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011).

We review de novo a district court's order dismissing a claim under Rule 12(b)(6). *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013). In doing so, we accept all well-pled factual allegations as true and determine whether they plausibly state a claim for relief. *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and we "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference[.]" *Handy–Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (internal quotation marks and citation omitted).

## III.

Plaintiffs challenge the district court's dismissal of the abuse of process claim, the excessive fines claim, the equal protection claim, and the civil conspiracy claim.[2] We address each in turn, starting with the abuse of process claim.

---

[2]Plaintiffs abandoned all state law claims at oral argument.

A.

The district court offered three reasons why it dismissed the abuse of process claim. First, the *Rooker–Feldman* doctrine barred the court from exercising subject-matter jurisdiction over the claim because it arises from injury caused by the state court judgment ordering plaintiffs to pay $45,480 in fines. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (the *Rooker–Feldman* doctrine precludes lower federal courts from entertaining suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). Second, even if the court had jurisdiction, plaintiffs failed to state an actionable claim because we have never recognized the existence of a federal "abuse of process" claim. *See Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005) ("This court has never specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983."); *see also Garcia v. Thorne*, 520 F. App'x 304, 311 (6th Cir. 2013) (observing that the existence of a federal abuse of process claim in our circuit remains an open question). And third, even if such a claim exists, it is nevertheless barred by the *Heck* doctrine because the basis of the claim necessarily impugns the validity of the state court's judgment finding plaintiffs responsible for the citations. *See Hensley v. Gassman*, 693 F.3d 681, 693 (6th Cir. 2012) (the *Heck* doctrine, arising from *Heck v. Humphrey*, 512 U.S. 477 (1994), holds that "a plaintiff may not sue under § 1983 when the basis for the claim necessarily implies the invalidity of a previous state criminal conviction").

We need only address the district court's second reason as it provides the most appropriate basis to affirm the dismissal of plaintiffs' abuse of process claim. Assuming arguendo that the *Rooker–Feldman* doctrine does not apply because plaintiffs' abuse of process

claim purportedly challenges *how* they were cited for violating the rental license ordinances and *not* their liability for the violations, the district court properly dismissed the claim because a federal abuse of process claim does not exist in the law of this circuit. *See Garcia*, 520 F. App'x at 311; *Voyticky*, 412 F.3d at 676.

Plaintiffs acknowledge this categorical bar but fail to articulate why we should recognize an abuse of process claim under § 1983. Indeed, other than offering vague and undeveloped references to the Eighth and Fourteenth Amendments, plaintiffs do not connect the alleged "abuse of process" to a violation of any "rights, privileges, or immunities secured by the Constitution and [federal] laws[.]" 42 U.S.C. § 1983. And at oral argument, plaintiffs candidly admitted that an abuse of process claim is available in state court. In sum, plaintiffs offer no good reason to federalize the abuse of process claim presented in this case.

Comparatively, the district court offered a persuasive reason why we should not:

The facts of this case demonstrate good reason not to [recognize the existence of a § 1983 abuse of process claim]. In essence, [plaintiffs' abuse of process] theory could potentially open the federal courts to every person who litigates and loses a ticket in state court, as long as the person can allege some motive beyond simple enforcement of the law. There is no reason to do so. In cases of genuine First Amendment retaliation or racial discrimination, the law already provides redress apart from a genuine abuse of process theory. There is no good reason to open the federal court to generic arbitrary and capricious review of state enforcement of civil infractions.

We agree with the district court's rationale. Therefore, because we have not recognized the existence of a § 1983 abuse of process claim, and because plaintiffs offer no persuasive reason why we should on the facts of this case, the abuse of process claim was properly dismissed.

B.

Next, the district court held that the *Rooker–Feldman* doctrine barred the excessive fines claim based on a presumption that plaintiffs were challenging the $45,480 in fines that the state

district court issued on remand after the state circuit court found that the $53,300 in fines originally assessed violated the Eighth Amendment's excessive fines clause. Plaintiffs take great exception to this holding. They repeatedly insist that they "are not complaining about the fines imposed by the state trial court after remand but they are only complaining of the fines imposed by the state trial court which were declared unconstitutional by the state [circuit] court." Despite this qualification, *Rooker–Feldman* remains applicable.

We understand plaintiffs' position that they are not disputing the $45,480 in fines ordered on remand. However, they unambiguously admit that they are challenging "the fines imposed *by the state trial court* which were declared unconstitutional by the state [circuit] court." (Emphasis added.) Consequently, it is apparent that but-for the original $53,300 judgment, the "excessive fines" claim would not exist. Therefore, the "source of injury" is a state-court judgment and *Rooker–Feldman* applies. *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309–10 (6th Cir. 2010) (holding that if a state-court judgment is the source of injury, then *Rooker–Feldman* applies). Further, even if *Rooker–Feldman* did not apply, plaintiffs offer no authority establishing a right to recovery for "excessive fines" under § 1983, nor have they suffered any injury because the original judgment was vacated on direct appeal and plaintiffs are not challenging the amount of fines ordered on remand. Accordingly, we affirm the dismissal of the "excessive fines" claim but for different reasons than those stated by the district court. *See Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010) ("[W]e may affirm on any grounds supported by the record even if different from the reasons of the district court." (internal quotation marks and citation omitted)).

C.

As for the equal protection claim, the district court determined that plaintiffs pleaded three different theories of liability. First, plaintiffs alleged that the ordinance enforcement action was impermissibly based on their age and Jewish heritage. Second, they alleged a "class of one" theory, claiming that the enforcement of the ordinance was "arbitrary and capricious." Third, plaintiffs alleged that they were "singled out" because of prior lawsuits between Rapp, his parents, and the City. The district court held that plaintiffs failed to state a claim under all three theories; plaintiffs appeal only the dismissal of the second.

To prevail on a "class of one" equal protection claim challenging as "arbitrary and capricious" the discretionary enforcement of a municipal ordinance—and assuming arguendo that such a claim escapes the holding of *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 598 (2008), which strongly suggests that a "class of one" equal protection theory is unavailable in the discretionary decision-making context—plaintiffs must plead and prove that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To meet that standard and survive a Rule 12(b)(6) motion to dismiss, the plaintiffs' complaint must contain enough factual matter to plausibly show there was not "*any* conceivable basis" that rationally supported the enforcement of the rental license ordinances. *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005).

The conclusory allegations in plaintiffs' complaint fail to make that showing; it is axiomatic that defendants have an interest in enforcing the applicable ordinances against those who openly violate them. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[A] plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss

simply by referring to conclusory allegations in the complaint that the defendant violated the law."). Moreover, the complaint contains no facts showing that the City treated plaintiffs differently from other individuals who violated the rental license ordinances. In the absence of something more than plaintiffs' speculation and conjecture that the City acted in an "arbitrary and capricious" manner, the equal protection claim was properly dismissed.[3]

D.

The parties' final dispute concerns whether the district court erred in dismissing the civil conspiracy claim under § 1983. A claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury. *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007); *see also Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) ("[Plaintiff] cannot succeed on a conspiracy claim because there was no underlying constitutional violation that injured her."). The conspiracy claim in this case depends entirely on the viability of the federal abuse of process claim. For the reasons expressed above, such a claim is not available in this circuit. Consequently, the conspiracy claim fails as a matter of law.

IV.

For these reasons, we affirm the judgment of the district court.

---

[3]To be clear, we affirm the district court's dismissal of the "class of one" equal protection claim but for a different reason than that stated by the district court. *See Campbell*, 600 F.3d at 677. The district court dismissed this claim by holding that it was "no different from the claim the Supreme Court rejected in *Engquist*[,]" whereas we assume without deciding that the claim survives *Engquist* but nevertheless fails the *Twombly–Iqbal* plausibility analysis.