NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0368n.06
No. 13-4477

FILED
May 21, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JERRY E. MOORE, SR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| WESBANCO BANK, INC., DANIEL | ) | THE SOUTHERN DISTRICT OF |
| FRY, and JANE/JOHN DOE, | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**BEFORE: BATCHELDER and WHITE, Circuit Judges; and COX, District Judge.**[*]

   **SEAN F. COX, District Judge.** Plaintiff-Appellant Jerry E. Moore, Sr., through counsel, appeals the district court's grant of summary judgment in favor of defendants on his claims for violation of 42 U.S.C. § 1983, abuse of process, and invasion of privacy by wrongful intrusion. For the reasons that follow, we AFFIRM.

**I.**

   Jerry E. Moore, Sr. ("Moore") is a black resident of Ohio and a banking customer of Defendant-Appellee WesBanco Bank, Inc. ("WesBanco"). In 2006, Moore's son, Jerry E. Moore, II ("Moore II") was charged with the robbery of an Insta-Cash business in Bridgeport, Ohio. Moore II is also black. Defendant-Appellee Daniel Fry ("Fry") was the Belmont County, Ohio prosecutor assigned to Moore II's case.

---

   [*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

Moore II was arrested approximately fifteen minutes after the robbery took place. He had $500 cash in his car. Before trial, Moore sought to provide his son's defense attorney, John Vavra ("Vavra"), with a copy of a check ("Check #108"), payable to cash in the amount of $500, which Moore had given Moore II as a housewarming present. This, Moore thought, would explain why his son had $500 cash in his possession shortly after the robbery occurred.

Moore went to WesBanco to request a copy of Check #108. Moore maintains that he received only a copy of Check #108, whereas WesBanco and Fry claim that Moore received copies of several checks, including Checks #107 and #109. Moore provided Vavra with a copy of Check #108 to be used in Moore II's defense.

During the second trial of Moore II,[1] Moore learned that Fry had somehow obtained copies of Checks #107 and #109. Moore insists that Fry unlawfully obtained these checks from WesBanco, and that WesBanco unlawfully provided these checks to Fry without Moore's authorization.

Moore filed suit against WesBanco and Fry, in his official and individual capacities, alleging that they were motivated to act improperly because Moore and Moore II are black. Moore sued WesBanco and Fry for violations of 42 U.S.C. § 1981 (interference with contracts); 42 U.S.C. § 1983; the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422; Ohio Revised Code § 4112.02; common law invasion of privacy, and abuse of process and misfeasance.

## II.

This is the second time that this case has been before this court. On March 8, 2012, the district court granted summary judgment to WesBanco and Fry on all of Moore's claims. On

---

[1] Moore II was tried three times for aggravated robbery. The first and second trials ended in a mistrial due to a hung jury; Moore II was acquitted of the charge at the conclusion of the third trial.

No. 13-4477, *Moore v. WesBanco Bank, Inc., et al.*

March 6, 2013, we issued an order affirming in part and vacating in part the district court's grant of summary judgment and remanding for further proceedings. (R. 55 at PageID# 905-911).

We affirmed the district court's grant of summary judgment to defendants on Moore's § 1981 claim because "[Moore] provided no evidence of racial discrimination." (R. 55 at PageID# 909). Specifically, we found that Moore's "general and conclusory allegations that white bank customers are treated differently than he was treated are inadequate, without additional factual support, to plead a claim for racial discrimination or to survive summary judgment." (R. 55 at PageID# 909).

We also affirmed the district court's grant of summary judgment to defendants as to Moore's claims for (1) violation of the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422, (2) malicious prosecution, (3) violation of Ohio Revised Code § 4112.02, and (4) common law invasion of privacy for publication of private affairs. (R. 55 at PageID# 909-10).

However, we vacated the district court's grant of summary judgment as to Moore's § 1983, abuse-of-process, and common law invasion of privacy for wrongful intrusion claims. (R. 55 at PageID# 908). As to these claims, we stated:

> Here, drawing all justifiable inferences from the evidence and reasonably resolving any credibility determinations in Moore's favor, a jury could find that an employee of WesBanco improperly provided Fry with copies of Checks 107 and 109. The district court relied on the opposite determination to grant summary judgment on Moore's § 1983, common law invasion of privacy for wrongful intrusion, and abuse of process claims. Accordingly, summary judgment on these claims was inappropriate.

(R. 55 at PageID# 909). We remanded those claims to the district court for further proceedings. (R. 55 at PageID# 910).

No. 13-4477, *Moore v. WesBanco Bank, Inc., et al.*

On remand, defendants urged the district court to consider the alternative grounds for summary judgment that they offered in their original motions, but which the district court did not initially consider.

The district court again granted summary judgment to defendants on all of Moore's remaining claims. With regard to Moore's § 1983 claim, the district court granted defendants' motions for summary judgment "to the extent that [Moore's § 1983 claim] allege[s] a deprivation of his federal right to be free from race discrimination under § 1981" because this court found that "Moore provided no evidence of racial discrimination." (R. 65 at PageID# 977-78). The district court reasoned that, if Moore lacked evidence of racial discrimination to support his § 1981 claim, then Moore also lacked evidence of racial discrimination to support his § 1983 claim. *Id.*

The district court also granted defendants' motions for summary judgment on Moore's § 1983 claim to the extent that it was based on a constitutional right to privacy in his financial affairs. The district court found that Moore has no constitutionally protected right to nondisclosure of his financial affairs under existing Sixth Circuit case law. (R. 65 at PageID# 982).

Alternatively, the district court found that Fry is entitled to qualified immunity, making summary judgment on his individual-capacity claim appropriate. The district court granted summary judgment to Fry in his official capacity because it found that Moore could not establish *Monell* liability. (R. 65 at PageID# 982-84).

The district court also granted Fry's motion for summary judgment on Moore's abuse-of-process claim. First, the district court concluded that no federal abuse-of-process claim under § 1983 exists in this Circuit. As to Moore's state law abuse-of-process claim, the district court

4

found that Fry, in his official capacity, was entitled to statutory immunity under Ohio Revised Code Chapter 2744, entitled the "Political Subdivision Tort Liability Act." The district court further found that summary judgment on the state-law abuse-of-process claim was proper because Moore could not show that Fry had an ulterior motive in obtaining the checks. (R. 65 at PageID# 987-88).

Having granted summary judgment to defendants on Moore's federal claims, the district court declined to exercise supplemental jurisdiction over his common law invasion of privacy by wrongful intrusion claim and dismissed it without prejudice. (R. 65 at PageID# 990).

Moore timely filed a Notice of Appeal. (R. 67 at PageID# 993-94).

**III.**

This court reviews the grant of summary judgment de novo. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The party who moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case. *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of his or her case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). In response, the plaintiff must come forth with more than a "mere existence of a scintilla of evidence" in support of his or her position in order to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251 (1986). The court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.

Moore alleges that the district court erred in granting summary judgment to defendants on remand because it improperly reconsidered questions of law that had already been settled by this court, in violation of the law-of-the-case doctrine.

The law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (quoting *Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004)). The complementary "mandate" rule requires the lower court to follow the orders of an appellate court following a remand. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).

"[U]pon remand of a case for further proceedings after a decision by the appellate court, the trial court must 'proceed in accordance with the mandate and the law of the case as established on appeal.' The trial court must 'implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Id.* (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3rd Cir. 1991)); *see also Westside Mothers*, 454 F.3d at 538.

The law of the case doctrine does not preclude the trial court from considering issues not expressly or impliedly decided by the appellate court. *Westside Mothers*, 454 F.3d at 538. "The law of the case doctrine 'has no application where the issue in question was not previously decided.'" *Fortis Corporate Ins., SA v. Viken Ship Mgmt. AS*, 597 F.3d 784, 792 (6th Cir. 2010)

6

(quoting *Niemi v. NHK Spring Co.*, 543 F.3d 294, 308 (6th Cir. 2008)). To determine whether a district court violated the law of the case doctrine, this court considers: "a) whether the [] issue was expressly or impliedly decided by this court in [the first appeal], and b) whether this court's mandate to the district court was so narrow in scope as to preclude the district court from considering the [] issue." *Yeschick v. Mineta*, 675 F.3d 622, 633 (6th Cir. 2012) (quoting *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 986 (6th Cir. 2006)) (alterations in original).

There are limited exceptions to the law-of-the-case doctrine. In a situation where the law of the case would prevent a district court from reconsidering an issue, the district court may nevertheless "reopen" the issue where there is "substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice." *Moored*, 38 F.3d at 1421–22 (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973), *cert. denied*, 414 U.S. 859 (1973)).

Moore argues that, in awarding summary judgment to defendants a second time, the district court improperly "reopened" issues that had been settled by this court in the first appeal. WesBanco maintains that the district court did not betray the law-of-the-case doctrine in granting summary judgment a second time because it considered other arguments that had not been explicitly or implicitly decided by this court. WesBanco construes this court's prior decision as partially vacating the district court's grant of summary judgment "*solely* because [this court] disagreed with the district court's determination that there was no genuine issue for trial as to how the two checks came into Fry's possession." (WesBanco Br., Doc. #21 at 12-13).

7

We agree with WesBanco's interpretation of our prior decision. When we partially vacated the district court's original grant of summary judgment, we did so based on our conclusion that there was a genuine issue of material fact as to whether WesBanco improperly provided Fry with copies of Moore's checks. We did *not* state that Moore had viable claims ripe for trial. On remand, the district court considered whether summary judgment in defendants' favor was warranted on alternative grounds that neither it nor we had previously considered. Therefore, the district court did not violate the law-of-the-case doctrine or the "mandate" rule.[2]

## V.

Moore filed suit against defendants alleging violation of his substantive due process right to privacy in his financial records, pursuant to 42 U.S.C. § 1983.[3]

---

[2] We also reject Moore's argument that defendants' failure to file a cross-appeal constituted a waiver of arguments that defendants raised to, but were not considered by, the district court in their motions for summary judgment. Defendants could not have pursued a cross-appeal when this case was first before us because, at that time, the district court had resolved all claims in their favor. Therefore, this court would have had no jurisdiction to entertain a cross-appeal by defendants. *Wheeler v. City of Lansing*, 660 F.3d 931, 939 (6th Cir. 2011) ("There is generally no appellate jurisdiction when the appellant does not seek a change in the relief ordered by the judgment appealed from."); *ASARCO, Inc. v. Sec'y of Labor*, 206 F.3d 720, 722 (6th Cir. 2000) ("[A] prevailing party cannot appeal an unfavorable aspect of a decision in its favor. . . . Appellate courts review judgments, not statements in an opinion.").

[3] Although it is not clear whether Moore alleges any error regarding his race discrimination claim brought under § 1983, Moore references racial "discrimination" throughout his brief and contends there is an issue of material fact whether Prosecutor Fry "refuses to prosecute crimes against black persons, that Fry has misused his authority with regard to subpoenas and that he or his office has exceeded his/its authority with regard to causing Moore's son to be suspended from his employment," and that "discrimination and/or improper purpose can be inferred from the fact that Wesbanco did release information concerning Plaintiff-Appellant Moore's bank account in order to help convict an innocent black man, Jerry Moore's son." (Moore Br. 34, 38). The district court acknowledged that "[a]ny § 1983 claims against WesBanco or Fry based on race discrimination do not survive appeal because the Sixth Circuit concluded that 'Moore provided no evidence of racial discrimination.'" (R. 65 at PageID# 977).
We agree. Our decision in the first appeal, concluding Moore failed to provide evidence of racial discrimination to sustain a § 1981 claim, impliedly resolved his § 1983 race discrimination claim because Moore bases the § 1983 claim on the same factual allegations

No. 13-4477, *Moore v. WesBanco Bank, Inc., et al.*

In order to prevail on a claim brought under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived him of a right secured by the U.S. Constitution or a federal law. *Savoie v. Martin*, 673 F.3d 488, 93–94 (6th Cir. 2012). A state actor's violation of an individual's substantive due process right to privacy may give rise to a cognizable § 1983 claim. *See, e.g.*, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069–70 (6th Cir. 1998) (reversing and remanding dismissal of plaintiff's § 1983 claims based on the defendant's public release of their personal information). The U.S. Supreme Court has found that individuals have a substantive due process right to privacy in those activities "which are 'fundamental' or 'implicit in the concept of ordered liberty.'" *Paul v. Davis*, 424 U.S. 693, 713 (1976) (citing *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).

In other words, "[t]he substantive due process clause protects two types of privacy rights." *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 590 (6th Cir. 2008) (citing *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)). A "fundamental" privacy right is an "individual's right to make 'personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education.'" *Id.* (quoting *Lawrence v. Texas*, 539 U.S. 558, 574 (2003)). The second type of privacy right is "an individual's 'interest in avoiding disclosure of personal matters.'" *Id.* (quoting *Whalen*, 429 U.S. at 599). This court has coined the latter interest the "informational right to privacy." *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (quoting *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998)).

---

supporting his § 1981 claim. (*See* Compl. ¶¶ 28, 30, 36–37.) Additionally, it appears Moore does not have standing to raise the claim against Fry because he has not alleged facts showing he was injured by Fry's alleged discriminatory prosecutions or misuse of his subpoena authority, or that he has third-party standing to assert the rights of his son.

9

We have adopted a two-step approach to evaluating constitutional claims arising from the alleged disclosure of an individual's personal information: (1) the court must determine whether the interest at stake implicated a right that is fundamental or implicit in the concept of ordered liberty, and (2) the court must determine whether the government's interest in releasing the information outweighs the individual's interest in keeping the information private. *Lambert*, 517 F.3d at 440.

This court narrowly construes the "informational right to privacy," extending it "only to interests that implicate a fundamental liberty interest." *Id.* Thus, we have "recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, and (2) where the information released was of a sexual, personal, and humiliating nature." *Id.* at 440.

As the district court recognized, Moore bases his § 1983 claim on his alleged right to privacy in his financial records. In considering the merits of Moore's § 1983 privacy claim, the district court concluded:

> Privacy in financial records is not a right that is either fundamental or implicit in the concept of ordered liberty. Neither the Supreme Court nor the Sixth Circuit has recognized a fundamental right to privacy in financial records. . . .
>
> Nor do the circumstances of this case bring it within one of the instances in which the Sixth Circuit has found a fundamental informational-privacy right—Plaintiff never alleged nor offered any evidence that the release of his financial information could lead to bodily harm, and the information obtained and released was certainly not of a sexual, personal, or humiliating nature. The case certainly does not implicate the fundamental rights of procreation, marriage, contraception, family relationships, and child rearing or education. In sum, Plaintiff may have a right to privacy in his financial information, but it is not so firmly rooted in our legal tradition as to constitute a fundamental right protected by the United States Constitution.

> Because Plaintiff does not have a constitutional right to privacy in his financial affairs, Plaintiff cannot make out a § 1983 claim based on a violation of such a right. Accordingly, the Court grants Fry and WesBanco summary judgment on Plaintiff's § 1983 claim.

(R. 65 at PageID# 981-82).

Moore summarily asserts that the district court erred in dismissing his § 1983 claim because "financial records have long been found to be entitled to constitutional protection under the right to privacy." (Moore Br. at 39). Moore's assertion is without merit. This court has previously rejected the proposition that individuals have a fundamental right to privacy in their financial affairs. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 575 (6th Cir. 2002) (citing *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (finding that, without more, mere production of plaintiffs' loan file to third parties is "far afield" from the fundamental interests protected by the right to privacy)). Indeed, Moore has no privacy interest in cancelled checks. As the Supreme Court recognized in the Fourth Amendment context: "The checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *United States v. Miller*, 425 U.S. 435, 442 (1976). Additionally, as the district court recognized, Moore has made no attempt to show how his alleged privacy right in his personal financial affairs is "implicit in the concept of ordered liberty." *Lambert*, 517 F.3d at 440.

Accordingly, Moore has not shown that he has a valid "informational right to privacy" in his financial records, including copies of his cancelled checks. Because Moore has failed to establish that he has a constitutionally protected privacy right in his financial records, we

conclude that Moore has failed to establish that defendants have deprived him of any constitutional or federal right. We therefore AFFIRM the district court's grant of summary judgment to defendants as to Moore's § 1983 claim.[4]

## VI.

In his complaint, Moore alleges, quite perfunctorily, that "the acts and conduct of defendant Fry constitute misfeasance and/or abuse of process." (R. 1 at PageID #10). Moore's allegations do not make clear whether he is attempting to plead an abuse-of-process claim under state or federal law. The district court considered whether Moore's asserted abuse-of-process claim could survive summary judgment under both federal and Ohio law; we shall do the same here.

Moore's alleged federal abuse-of-process claim can be easily disposed of, as this court has consistently declined to recognize an abuse-of-process claim under 42 U.S.C. § 1983. *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014) ("[A] federal abuse of process claim does not exist in the law of this circuit."); *see also Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005) ("This court has never specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983."). Therefore, to the extent that Moore purports to assert a claim for abuse of process under federal law, that claim was properly rejected by the district court.

Ohio does, however, recognize an abuse-of-process cause of action. *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 68 Ohio St. 3d 294, 298 (1994). "[A]buse of process occurs where

---

[4] Because we affirm the district court's grant of summary judgment on the merits of Moore's § 1983 claim, we decline to address whether Fry is entitled to qualified immunity. We also decline to consider whether the district court erred in finding that Moore cannot establish the necessary elements of *Monell* liability. Further, we do not address whether WesBanco can be held liable under § 1983, as a person acting under the color of state law.

someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St. 3d 264, 271 (1996). Under Ohio law, "the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich*, 68 Ohio St. 3d at 298.

Fry argued, and the district court found, that he is entitled to statutory immunity under Ohio's Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.03. That statute provides, in pertinent part:

> (A)    In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> (1)    The political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function.
>
> . . . .
>
> (3)    The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

Ohio Rev. Code § 2744.03.

Fry is a prosecutor in the Belmont County Prosecutor's Office. The Belmont County Prosecutor's Office is a political subdivision, as defined in Ohio Rev. Code § 2744.01(F) ("'Political subdivision' . . . means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area

13

smaller than that of the state."). "The statutory definition of 'governmental function' includes prosecutorial functions" as defined by § 2744.01(C)(2)(f). *See Bykova v. Cuyahoga Cnty. Dep't of Child & Family Servs.*, No. 95484, 2011 WL 917743, at *2 (Ohio Ct. App. 2011) (unpublished). The conduct from which Moore's alleged injury is derived appears to be prosecutorial in nature; Moore does not argue otherwise. Furthermore, while there are certain exceptions to Ohio's governmental immunity statute detailed in Ohio Rev. Code § 2744.02(B), it is undisputed that none of those exceptions apply here. Based on the facts of this case and the plain language of Ohio's statutory immunity provision, we conclude that the district court did not err in finding that Fry is entitled to statutory immunity under Ohio law. We therefore affirm the district court's grant of summary judgment to Fry on Moore's state-law abuse-of-process claim.

The district court further concluded that Moore's abuse-of-process claim fails on the merits. (R. 65 at PageID# 987). We agree. Moore has not pointed to any evidence indicating that Fry initiated any legal process with an ulterior motive or for an improper purpose. Therefore, Moore cannot establish the second element of an abuse-of-process claim under Ohio law, i.e., that a legal proceeding "has been perverted to attempt to accomplish an ulterior purpose for which it was not designed." *Yaklevich*, 68 Ohio St. 3d at 298. We AFFIRM the district court's grant of summary judgment to Fry on the abuse-of-process claim.[5]

---

[5] Defendants argue that the district court properly declined to exercise supplemental jurisdiction over Moore's common law invasion of privacy by wrongful intrusion claim after it dismissed all of Moore's federal claims. (WesBanco Br. at 36; Fry Br. at 27). We find that Moore has abandoned this issue, as he does not argue that the district court abused its discretion in declining to exercise supplemental jurisdiction over his remaining state-law claim. *Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991) (finding that, when a plaintiff fails to raise an issue pertaining to a lower court's ruling, the issue is considered abandoned on appeal and not reviewable).

## VII.

For these reasons, we **AFFIRM**.