NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0450n.06

Case No. 24-3505

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| $774,830.00 IN U.S. CURRENCY, | ) | NORTHERN DISTRICT OF OHIO |
| Defendant, | ) | |
|  | ) | OPINION |
|  | ) | |
| ALEXANDRE P. HAUSSMANN, | ) | |
| Claimant - Appellant. | ) | |
|  | ) | |

**FILED**
Nov 07, 2024
KELLY L. STEPHENS, Clerk

Before: CLAY, GIBBONS, and McKEAGUE, Circuit Judges.

PER CURIAM. This is the second appeal stemming from a civil forfeiture proceeding concerning a sum of U.S. currency found in the trunk of a rental car driven by Alexandre Haussmann. *See United States v. $774,830.00 in U.S. Currency*, No. 22-3392, 2023 WL 1961225 (6th Cir. Feb. 13, 2023).[1] In the first, we determined that the district court erred by granting summary judgment for the government on standing grounds, because Haussmann had established standing to contest the forfeiture at the summary judgment stage. *Id.* at *1. On remand, the district court granted the government's motion to strike Haussmann's verified claim and answer. It then granted the government's motion for a default judgment. This time, we affirm.

---

[1] The underlying facts and procedural history leading up to that decision are more fully recounted in that opinion. We summarize them briefly here.

**I.**

Alexandre Haussmann was driving a rental car on Interstate 80 near Youngstown, Ohio on April 21, 2020, when he was stopped by police. *$774,830.00*, 2023 WL 1961225, at *1. Officers searched his car and seized $774,830.00 in American currency. *Id.* United States Customs and Border Protection began an administrative forfeiture proceeding, which later became a civil forfeiture proceeding once Haussmann filed a sworn claim of ownership. *Id.* In this verified claim, Haussmann asserted an ownership interest in the property for the purposes of contesting the seizure. Haussmann then filed a motion to suppress evidence related to the seizure as having been gained in violation of the Fourth Amendment. The government filed special interrogatories pursuant to Rule G(6)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"), seeking to obtain information regarding Haussmann's relationship to the seized currency. *$774,830.00*, 2023 WL 1961225, at *1-2**.** The district court denied Haussmann's motion to stay discovery pending consideration of his motion to suppress and ordered discovery to proceed.

Haussmann broadly objected to almost all special interrogatories and the production of documents on Fourth Amendment grounds. When he was deposed, Haussmann "answered questions about his checking account, financial assets, and his travel before being stopped by law enforcement" but refused to answer questions about his future travel or relationship to the currency. *Id.* at *2. The district court granted the government's motion for summary judgment, determining that Haussmann's assertions of ownership were unsupported and that he thus lacked standing. *Id.* With no standing, Haussmann's motion to suppress was moot. *Id.*

Haussmann appealed. We reversed the district court, holding that it "failed to acknowledge that the government's contributions to the record could support Haussmann's claim for standing"

and "did not recognize" that it had relied on cases in which the district court had "previously struck a defendant's verified claim of ownership *before* granting summary judgment for lack of standing." *Id.* at *4. Since Haussmann's ownership claim was supported by the government's filings[2] and since the district court had not yet struck the verified claim, its decision granting summary judgment for lack of standing was error. *Id.* at *5. We closed by stating that "[t]his case may have had a different outcome had the district court exercised its discretion to strike Haussmann's ownership assertions due to his repeated refusals to participate in certain aspects of the discovery phase." *Id.*

On remand, the district court did just that. After a status conference, the government moved to strike Haussmann's verified claim based on an argument that he had "abused" the discovery process and failed to show standing, and Haussmann opposed (and filed a motion for an evidentiary hearing on his motion to suppress). The district court granted the motion to strike, and once again denied the motion to suppress as moot. The district court entered a default judgment in favor of the government, and this appeal followed.

## II.

We review a district court's decision to strike a civil forfeiture claim for abuse of discretion, but a legal determination that a claimant lacks standing is reviewed de novo. *United States v. $39,000.00 in U.S. Currency*, 951 F.3d 740, 742 (6th Cir. 2020). A claimant in a forfeiture action bears the burden of establishing standing at each stage of the litigation. *Id.*

---

[2] The government's complaint alleged that law enforcement had "seized the currency directly from the trunk of Haussmann's rental car, when he was operating it," which served as "an admission that he exercised some control over it at the time of its seizure." *$774,830.00*, 2023 WL 1961225, at *4. This admission supported Haussmann's otherwise bare but sworn assertions of ownership. *Id.*

**A.**

Haussmann's primary argument on appeal is that the applicable statutes and the law of the case doctrine require the district court to consider his motion to suppress before considering the government's renewed motion to strike his discovery responses. He is mistaken on both counts.

Haussmann claims that "there is no statutory basis to allow the Government to delay or postpone a Rule G(8)(a) motion to suppress by challenging a claimant's standing or his Rule G(6) interrogatory responses." R.8 at 23 (emphasis omitted). On the contrary, a district court in this context addresses standing issues before suppression issues. "Before determining whether the government lawfully seized the defendant property, [Haussmann] must establish that he has standing to challenge the lawfulness of seizure." *$39,000.00*, 951 F.3d at 742. This court has repeatedly affirmed dismissals for lack of standing in situations where a claimant asserts a naked ownership interest in a verified complaint, files a motion to suppress, and refuses to substantively respond to special interrogatories, leading to a successful motion to strike pleadings by the government. *United States v. $99,500.00 in U.S. Currency*, 795 F. App'x 332, 334–35 (6th Cir. 2019) (claimant "argued that he was not required to respond to [discovery] requests until the United States survived his motion to suppress"); *United States v. $31,000.00 in U.S. Currency*, 774 F. App'x 288, 292 n.1 (6th Cir. 2019) (because claimants lacked standing, "we do not consider their underlying claims about the propriety of the initial seizure"); *United States v. $46,340.00 in U.S. Currency*, 791 F. App'x 596, 597 (6th Cir. 2020) (because standing was lacking "we will not consider his merits-based contention regarding the propriety of the initial seizure." (citation omitted)). The district court followed the correct order of operations, Haussmann's out-of-circuit caselaw to the contrary notwithstanding.

Haussmann also directs our attention to the law of the case doctrine. This is the principle that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citation omitted). When the decision in question is rendered by an appellate court, the corresponding rule requiring the district court to follow both the "letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces," is known as the mandate rule. *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 820 (6th Cir. 2015) (quoting *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994)). But both rules allow a trial court to "consider[] issues not expressly or impliedly decided by the appellate court." *Id.*

In our prior decision we held that "[b]ecause Haussmann asserted his ownership interest in his verified claim, answer, and interrogatory responses, and because the government furnished evidence of Haussmann's control of the rental vehicle when the currency was seized from its trunk, he established constitutional standing at this stage of the litigation." *$774,839.00*, 2023 WL 1961225, at \*5. Critically, with the verified claim in the record, the court was "required" to view the claim's assertion of ownership "in a light most favorable to Haussmann within its standing analysis." *Id.* We stated that the "case may have had a different outcome had the district court exercised its discretion to strike Haussmann's ownership assertions due to his repeated refusals to participate in certain aspects of the discovery phase." *Id.* We also stated that our decision did not govern standing at any later stage of the litigation. *Id.* And we then remanded for further proceedings. *Id.*

Haussmann contends that we decided more than we did. Our decision confirming Haussmann's standing was based on the record as it then existed. That record held a verified complaint asserting ownership, supported by contentions supplied by the government's own

filings. But we neither expressly nor impliedly decided more than that. Our opinion did not hold that the district court lacked the discretion to strike Haussmann's claim or that his discovery conduct merited no sanction. The district court retained its discretion to manage the record. Rule G(8)(c)(i) provides that the government may move to strike a claim "at any time before trial." And Article III courts have a continuing obligation to assure themselves of the parties' standing. *In re Troutman Enters.*, 286 F.3d 359, 364 (6th Cir. 2002).

Here, the district court found that Haussmann had "abused" the discovery process by refusing to respond to interrogatories and asserting a blanket Fourth Amendment objection in response to discovery requests. DE 64, Order Granting Motion to Strike, Page ID 661. To be sure, the district court was drawing from the more common cases where a claimant refuses to respond to interrogatories while asserting a Fifth Amendment right against compelled self-incrimination. *See, e.g.*, *$99,500.00*, 795 F. App'x at 337; *$46,340.00*, 791 F. App'x at 597. But in a posture like this one where courts consider standing issues before they consider merits-based motions to suppress, *see $39,000.00*, 951 F.3d at 742, the analogy between blanket Fourth and blanket Fifth Amendment objections was permissible.

Neither statute nor the law of the case prevented the district court from striking Haussmann's claim. That decision was not an abuse of discretion.

**B.**

Haussmann also argues that the district court should have given him the opportunity to cure his failures to cooperate with discovery before entering a sanction that terminated his case, because under Federal Rule of Civil Procedure 37(b)(2), disobedience of a court order is required before sanctions are entered. He is also mistaken in this argument. The government's motion to strike his pleadings was not made under Federal Rule of Civil Procedure 37(b)(2)—as the district court

recognized, it was made under Rule G(8)(c) and argued that Haussmann's failure to participate in discovery showed that his claim should be struck as having failed to show standing. As such, no disobedience of a court order and no opportunity to cure was required.

**III.**

Without the claim in the record, Haussmann has not met his burden to show a "colorable ownership, possessory or security interest in at least a portion of the defendant property such that he would be injured by its forfeiture." *$774,830.00*, 2023 WL 1961225, at *3 (citation omitted). He therefore lacks standing.

For the foregoing reasons, the judgment of the district court is AFFIRMED.